GERARD TANGUAY *vs.* WARWICK CHEMICAL COMPANY.

JULY 5, 1934.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

446

MURDOCK, J. This action of trespass on the case for negligence, after a trial in the Superior Court resulting in a verdict for the defendant, is here on plaintiff's exceptions: (1) to the denial of his motion for a new trial; (2) to the charge to the jury and (3) to the refusal to answer "No" to a question asked by the foreman of the jury.

On February 28, 1933, plaintiff was riding along Douglas Pike in the town of North Smithfield in an automobile owned by the defendant and operated by one William Butler, a salesman in the employ of defendant. The plaintiff testified that while proceeding along said highway, in the direction of Providence, Butler drove the defendant's automobile at a high rate of speed and that plaintiff cautioned him several times and warned him of a bad spot in the road near a railroad crossing. Butler did not slacken his speed and struck a sharp rise in the road near said crossing. The automobile left the road, crashed through a guard rail and came to a stop in some near-by woods. Plaintiff and Butler were thrown through the roof of the automobile, Butler was instantly killed and plaintiff severely injured.

Plaintiff contends that he was a guest or invitee of defendant and the defendant maintains that plaintiff was a fellow servant of Butler. Plaintiff testified that about 10 a. m. on the day aforesaid Butler appeared unexpectedly at plaintiff's home in Woonsocket. Plaintiff's testimony as to the reason of this visit is as follows: Q. "Did he come there for any purpose?" A. "Yes, sir. He wanted me to visit the textile trade with him." Q. "Where?" A. "In the Blackstone Valley and adjacent territories." Q. "Did he say anything to you about the proposed trip· that you were to make?" A. "Yes, sir. He told me that his employers wanted him to cover that territory and that they told him to ask me if I would go along with him." Q. "Did you go along with him?" A. "Yes, sir, I did."

Q. "Were you familiar with that territory over which Mr. Butler intended to go?" A. "Yes, sir, I was." Q. "Do you know whether he knew you were familiar with that territory?" A. "Surely, he did." Q. "Was that the reason you went to cover that territory with him?" A. "Yes, sir." Q. The court: "Did he say anything to you that he didn't know the territory?" A. "Yes, sir, he wanted information about the local mills."

The plaintiff requested a special finding as follows: Was the plaintiff, Gerard Tanguay, at the time of the accident on February 28, 1933, a fellow servant with William Butler in the employ of the Warwick Chemical Company? And defendant requested a special finding as follows: Was the plaintiff riding with Butler on the day of the accident to assist Butler in his work? Both of these questions were answered "Yes."

The plaintiff contends that his exception to the denial of his motion for a new trial should be sustained for the reason that the verdict was not actually approved by the trial justice. This contention is based on the following excerpt from his rescript. "The court instructed the jury as to the fellow servant doctrine and, if the instructions of the court to the jury were without error, then the jury were justified in returning the verdict that they did from the uncontradicted evidence in the case. If the court was in error, then the verdict should be set aside, but this court cannot correct any error in the instructions as to the law. Therefore, the motion for a new trial is denied."

Assuming that the trial justice was right in his view of the law applicable to the case, the verdict has his unqualified approval. As he said in his rescript: "The case narrowed down to the question as to whether or not Butler and Tanguay were fellow servants."

The plaintiff in his brief argues that he was not a fellow servant because he performed no service for the defendant. This argument is beside the mark. The question is under what circumstances did he enter defendant's car and ride with its servant? Plaintiff's right of recovery rests on his

having been a guest of defendant and his own testimony negatives this relation. He says he went with Butler to assist him in his work for the defendant. He points out the nature of this assistance which was to acquaint Butler with the territory with which he was unfamiliar. That he did perform some service of the character that he undertook to perform is evident from his testimony. Q. "When you arrived in Nasonville where did you go?" A. "We stopped by the side of the road to discuss further work, as it was a little early to make our proposed call at the W. & K. Company."

If, after entering defendant's car for the purpose which he says he entered it, he declined to render the service that he had undertaken to render, his relation to the defendant would have been nearer to that of a trespasser than an invited guest. The only evidence that plaintiff was a guest comes from defendant's sales manager who testified that he knew of the friendship between Butler and Tanguay and that they had occasionally ridden together and that he never made any objection. But this testimony is of no help to plaintiff who by his own testimony says that on the day of the accident he went with Butler to assist him in his work for the defendant.

In contemplation of law one may be a fellow servant without having been actually employed by the master. This rule is definitely established in *Baynes* v. *Billings*, 30 R. I. 53, where the court quoted with approval the rule stated in Wood, Master and Servant, which is as follows: "A person who voluntarily and without any employment undertakes to perform a service for another, stands in the same relation as a servant for the time being, and is regarded as assuming all the risks incident to the business. And this is so, even though the service is not wholly voluntary, but is induced by request of a servant in the defendant's employ." *Ryan* v. *Unsworth*, 52 R. I. 86; *Brooks* v. *Central Sainte Jeanne*, 228 U. S. 688. Plaintiff's own testimony brought him within this rule and justified the finding of the jury that plaintiff was, on the day of the accident, a

fellow servant of Butler. The exception to the denial of plaintiff's motion for a new trial is overruled.

No exception was taken by plaintiff to the court's direct charge to the jury. Defendant presented nine requests to charge all of which were granted and exception was taken by plaintiff to the granting of eight of them. Plaintiff in his brief says with respect to the granting of these requests to charge: "The defendant's requests to charge, to which the plaintiff excepted, had reference chiefly to the question of the authority of Butler to invite the plaintiff to go with him in the automobile." This authority was so fairly established by the evidence that the jury, as well as the trial justice, must have been impressed that it did exist. This is manifest from the fact that, when the jury came back into the court room for further instruction, they sought no information on that question. That was simply a plain matter of fact upon which even the defendant's request to charge, as given by the court, did not operate to confuse them. It would be superfluous to devote any attention here to these requests, except for the purpose of showing how little consideration the trial court could have given them before including them in his charge. These requests are open to the objection of redundancy. Some could have been combined with others and the rules of law involved could have been expressed in narrower compass. The requests were manifestly intended to cover all possible inferences that the jury might draw from the testimony. The granting of these requests did not constitute reversible error.

After the jury retired they returned for further instructions. The foreman said: "The jury would like to have you recite the decisions of the Supreme Court in regard to a fellow servant." Whereupon the court read from *Ryan v. Unsworth, supra,* and *Baynes v. Billings, supra.* In response to a question of the court if there was anything else, the foreman replied: "No, that is clear." Whereupon the court and counsel entered into a discussion as to

the law pertaining to fellow servants. Excerpts from opinions and from text books were read and counsel expressed their views as to the conclusions to be drawn from these authorities. This proceeding was almost certain to result in confusing the minds of the jury, and when this discussion had ended the foreman said: "What the jury wants to know is this: If an employee hires somebody else without the consent of his employer, would he be called a fellow servant?" The court answered this question by reading to the jury that part of the opinion in *Baynes* v. *Billings, supra*, herein quoted. Counsel for defendant then said: "Now I request the court to answer that question 'Yes'." The court said "No, I am not going to answer it. I have given the law." Counsel for the plaintiff said: "I think the question plainly calls for an answer 'No'."

It was not error on the part of the court to refuse to give a categorical answer to the question of the foreman. The question was answered in the last sentence of the citation which the court read to the jury from *Baynes* v. *Billings, supra:* "And this is so, even though the service is not voluntary, but is induced by request of a servant in the defendant's employ." While it would perhaps have been clearer to the jury had the court given the instructions in his own words, yet it is evident from their verdict and special findings that they comprehended fully the issue placed before them for decision.

All plaintiff's exceptions are overruled and the case is remitted to the Superior Court for the entry of judgment on the verdict.

SWEENEY, J., dissenting. Plaintiff was frightfully injured and crippled for life by the negligent operation of defendant's automobile in which he was riding. Mr. Butler, the operator of the automobile, was killed as a result of the accident. The defense was that plaintiff and Butler were fellow servants. Defendant's president testified that plaintiff was not employed by defendant; that plaintiff was one

of defendant's competitors in selling soap and that Butler had no authority to ·ask plaintiff to ride in defendant's automobile.

At the close of his general charge the trial justice said: "The defendant has requested various (8) charges. Do you want me to cover them all?" Defendant's attorney, Mr. Andrews, replied: "You can grant them or deny them or say which have been covered." The justice then read and granted all .of them. Plaintiff took exception to the granting of six of the eight requests to charge.

In the majority opinion it is said: "It would be superfluous to devote any attention here to these requests, except for the purpose of showing how little consideration the trial court could have given them before including them in his charge. ·. . . The granting of these requests did not constitute reversible error." I am constrained to dissent from this conclusion.

As the opinion does not state the substance of the requests it is necessary to quote four of them so it may be seen how manifestly erroneous and prejudicial they were to the plaintiff. They are as follows:

> "6. If you find that Butler did not have authority from Mr. ·Nathan or Mr. Weller to make the statement that plaintiff says Butler made when he came for the plaintiff the morning of the accident, your verdict will be for the defendant even although you believe Butler made that statement and even if you believe Butler thought he had the authority to make that statement.

> "7. If you find that Butler did have authority from defendant to make the statement and did make the statement that the plaintiff says he made when Butler came for the plaintiff the morning of the accident, your verdict will be for the defendant.

"8. If you find that plaintiff went with Butler on the day of the accident to assist Butler in his work as salesman for the defendant your verdict will be for the defendant whether or not Butler asked him to go for that purpose and whether or not Butler had authority from the defendant to ask him to go for that purpose.

"9. If you find that plaintiff did not go with Butler on the day of the accident to assist him in his work as salesman for the defendant, your verdict will be for defendant, whether or not Butler asked him to go to assist him in his said work and whether or not Butler had authority from the defendant to ask him to go for that purpose."

It will be seen that requests six and seven relate to the authority of Butler to ask plaintiff to go with him. In both requests the jury is instructed to return a verdict for the defendant: in the sixth request, if Butler had no authority to invite the plaintiff; and, in the seventh request, if Butler had such authority. It is apparent that the granting of both of these requests was equivalent to directing the jury to return a verdict for the defendant.

The eighth and ninth requests relate to the purpose for which plaintiff went with Butler. In both requests the jury is instructed to return a verdict for defendant: in the eighth request, if plaintiff went to assist Butler in his work for defendant; and in the ninth request, if plaintiff did not go for this purpose. The granting of both of these requests was also equivalent to directing the jury to return a verdict for defendant.

These four requests being granted, the jury had no alternative but to return a verdict for defendant, as the trial justice had previously instructed them that it was their duty to follow his instructions.

In the opinion it is stated: "The granting of these requests did not constitute reversible error." I cannot

think of any reason for this statement. None is given in the opinion. If the granting of the requests did not constitute "reversible error" what kind of error was it? Nothing can be more prejudicial to a party to a law action than the erroneous direction of a verdict against him, and such a direction has always been held to be "reversible error." In *Nahabedian* v. *United Electric Railways Co.*, 50 R. I. 455, this court said, in an opinion written by Mr. Justice RATH-BUN: "The instruction left nothing on the question of liability for the jury to decide and was tantamount to a direction of a verdict for the plaintiffs on the question of liability" and sustained the defendant's exception to said instruction and ordered a new trial. In *Greenhalch* v. *Barber*, 104 Atl. 769, this court held, in an action for injury sustained by plaintiff, a pedestrian, when struck by defendant's automobile, that instructions that the driver of an automobile must use all possible care to avoid injuring a pedestrian and instructions that he must use the care of an ordinarily prudent man were confusing and misleading, and sustained defendant's exceptions and ordered a new trial. In *McNear* v. *American & British Mfg. Co.*, 42 R. I. 302, instructions submitting to the jury the question whether there was an illegal combination, and charging that there was no evidence of conspiracy to fix prices or restrain trade, were held to be contradictory and misleading; defendant's exceptions were sustained and a new trial was granted. In *Souza* v. *United Electric Railways Co.*, 51 R. I. 124, this court, in sustaining defendant's exceptions to a portion of the charge relating to the doctrine of the last clear chance, said at p. 129: "It is a fact that said justice once stated the rule correctly, so far as the point herein involved was concerned, but taking the charge as a whole upon this point the instructions were inconsistent and misleading" and ordered a new trial. The court correctly applied the rule upon the exceptions of these four defendants, and the same rule ought to be applied upon the exceptions of the plaintiff in the instant case.

In view of the misleading, confusing and inconsistent statements in the ·charge, it is not surprising that the jurors were obliged to return into court and ask for clearer and more specific instructions. After some conversation between the foreman and the judge, and a colloquy between both counsel and the court, the foreman said: "What the jury wants to know is this: If an employee hires somebody else without the consent of his employer, would he be called a fellow servant?" The judge answered this question by again reading the portion of the opinion from *Baynes* v. *Billings* which appears in the majority opinion. Defendant's attorney requested the court to answer the question "Yes" and the court said: "No. I am not going to answer it. I have given the law." Plaintiff's attorney said: "I think the question plainly calls for an answer 'No.' The court said: "Let them figure that out; I will give you both an exception." The jury then retired.

The foreman of the jury asked a simple question of law and the trial justice should have answered it "Yes" or "No" with such explanation as he deemed desirable, rather than leaving it for the jury to "figure out for themselves." Since 1827 no jury in this State has been permitted to decide for themselves questions of law. *Opinion to the Senate*, 24 R. I. 625. The statutory duty of a justice presiding at a jury trial in the Superior Court is to instruct the jury in the law relating to the case. § 4640, G. L. 1923. If the jurors do not understand the instructions as given, or their application, it is the duty of the trial justice to explain his instructions upon the request of the jurors and to answer their simple and clear questions of law so that they may intelligently apply the law to the evidence. The instructions should be so clear and simple that jurors of ordinary intelligence will not be confused or misled by them. 64 C. J. 631.

For these reasons plaintiff's exceptions to the granting of the four quoted requests to charge and his exception to the refusal of the trial justice to answer the question of the

foreman of the jury should be sustained and a new trial should be ordered.

*Ambrose Kennedy, James T. Greene*, for plaintiff.

*Hinckley, Allen, Tillinghast & Wheeler, Harold A. Andrews,* for defendant.